# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed June 2, 1904.

CHARLES D. HAUGH,
VS.
MARY A. WILLOUGHBY, EXECUTRIX.

*Isaac Lobe Straus* for caveator.

*William S. Bryan, Jr.*, and *Roger T. Gill* for caveatee.

STOCKBRIDGE, J.—

Two motions are now pending in this case for the determination of the court and have been argued together—a motion of the caveator for a new trial, and a motion on the part of the caveatee to dismiss the first motion. The latter motion is based upon the fact that after a verdict had been rendered by the jury in favor of the caveatee, and while the motion for a new trial was pending, the caveator called on and re-

ceived from the trustee $1,448.75, as income from the estate of his mother. Such income could be payable by the trustee only under the will, and this act is set up by the motion to dismiss as an affirmance of the will on the part of Mr. Haugh, and the motion is urged on the authority of Fisher vs. Boyce, 81 Md., 46.

Without attempting to review the numerous authorities cited in the very learned argument for the caveator, it will be sufficient to say that in the view of the court the facts in this case present an entirely different question from that involved in the case cited of Fisher vs. Boyce, or in the case of Reichard vs. Izer, 95 Md., 451, and that the estoppel asserted cannot be maintained. It is not now a question whether Mr. Haugh shall receive some benefit or no benefit from the estate of his mother as it was in Fisher vs. Boyce; nor has he done any act in pais which is necessarily inconsistent with his position as caveator, or has he placed himself upon the record in an inconsistent position. Whether the ultimate position of Mr. Haugh shall be that of a legatee under the will of his mother, or a distributee of her estate, the fact remains that he will receive a sum considerably in excess of that which he obtained from the trustee.

The real question raised by his action is rather one between him and the trustee than one between the parties to this suit. If the trustee was willing to assume the risk of making the payment to him that it did, no one else has been injured thereby, for if the act was improper and unwarranted, the money can be collected from the trustee by whoever may be entitled to it. The motion to dismiss the motion for a new trial will, therefore, be overruled.

II. The motion for the new trial is based upon two grounds, that of newly discovered evidence, and because of error in the instruction of the court. The affidavit filed in support of the first reason assigned falls far short of what is required by the rule, and cannot be taken as showing a sufficient ground for sustaining the motion.

The second assigned ground can not be so lightly disposed of. It has been ably presented and sought to be supported by a great array of authorities. Instead of reviewing these seriatim I shall content myself with stating certain conclusions, and tracing what appears to be the true rule of law applicable to questions such as are presented under this head.

The issues transmitted from the Orphans' Court in this case were six in number, of which the first and third were in the following language:

"1st. Was the said Honora C. Haugh at the time of the alleged execution of said alleged will of sound and disposing mind, memory and understanding, and capable of executing a valid deed or contract?"

"3rd. Was the said Honora C. Haugh, at the time of the alleged execution thereof, aware of the contents and effect of the paper-writing dated the 3rd of June, 1901, purporting to be her last will and testament?"

It is a cardinal rule in the framing of issues upon the validity of a will, that each issue should be so framed as to embrace but a single question, and next, that two issues with regard to the same will should not be framed so as to raise the same question.

The purpose of this is manifest. If the same issue could be presented to a jury in two or more different forms as the result of a variation of the language in which the question was framed, the inevitable result would be to confuse the minds of the jury, and would in some cases result in the rendering of verdicts by the jury upon different issues which would be inconsistent with one another and make necessary successive trials of the same case.

Another general rule which cannot be controverted is that where there is no evidence whatever in support of an issue transmitted from the Orphans' Court is just as much the duty of the court to withdraw that issue from the consideration of the jury by a proper instruction as it is to submit to the determination of the jury any issue with regard to which there is evidence, no matter how weak and inconclusive that evidence may be to the mind of the court.

Having thus stated the general rules, it remains to apply them to the case in hand. The first issue presented clearly and beyond the possibility of any misunderstanding the question of the mental capacity of Mrs. Haugh at the time of the making of her alleged will. And this issue was submitted to the jury by an appropriate instruction.

In this condition what was the question presented by the third issue? If as contended this also presented the question of mental capacity, then the question of mental capacity was raised by two separate issues, a construction which should not be placed upon them unless the phraseology necessarily demands it. The first issue involving the mental capacity of the testatrix and nothing else, the proper meaning of third issue was naturally exactly what its language imports, viz: Assuming that Mrs. Haugh was possessed of sufficient mental capacity to execute a will on the 3rd day of June, 1901, did she know what she was doing, and was she aware of what she had done?

If there had been no issue distinctly and directly upon the question of mental capacity, then it might, and would have been perfectly proper to have by appropriate instruction submitted that question as a part of the third issue, and in the cases where the question of mental capacity has not been kept separate and distinct as an issue by itself, that enquiry has been submitted to a jury under an issue framed as was the third issue in this case, although its submission under such an issue is unfortunate since the effect is in reality to present two entirely separate questions to the jury by a single issue.

It is not a sufficient answer to say that because there was evidence tending to show that the testatrix was not mentally competent, that, therefore, by reason of her weakened mental condition the jury should have passed upon whether she knew the contents and effect of the paper she was executing.

That is neither more nor less that mental capacity, a question which had already been submitted to the jury under the first issue, and to have sent the third issue to the jury with an instruction such as that asked by the caveator with regard to it by his sixth prayer, converting the issue from what it purported to be on its face to one in regard to mental capacity would have been a plain error.

But it is urged that even if that prayer was not granted the issue should have been submitted with an instruction as to the presumption of law; and such a contention would have been well founded had there been any evidence whatever going to sustain the position of the caveator with regard to this issue, taking it in its true meaning as already pointed out.

There was, however, no such evidence, and in the absence of evidence tending to sustain the issue according to its true intent and plain and obvious meaning, the court was bound to so instruct the jury. But it is further urged that the withdrawal of this third issue from the consideration of the jury tended to improperly prejudice them with respect to the first issue. This contention is not well founded.

The third issue itself nowhere makes any mention of, or reference to, the mental capacity of the testatrix; the jury had already been instructed with regard to the first issue, that if they believed from the evidence that Mrs. Haugh was at the time of executing the paper, incapable of executing a valid deed or contract, that then the alleged will was void, and the withdrawal of the third issue only told them that in case she had sufficient capacity to execute such a paper there was no sufficient evidence that she was unaware of the contents and effect of it to justify a verdict for the caveator.

Entertaining the foregoing views the motion for a new trial will be overruled.